State of Illinois      )
                          )      SS:

County of Cook      )

## UNITED STATES DISTRICT CIRCUIT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SALVATORE ZICCARELLI, | ) | Case No. 17 C 3179 |
| Plaintiff, | ) | |
| | ) | Judge Guzman |
| v. | ) | |
| THOMAS J. DART, Sheriff of Cook County, | ) | |
| Illinois, COOK COUNTY, ILLINOIS, a | ) | |
| Municipal Corporation and Body Politic, | ) | Magistrate Judge |
| Defendants. | ) | Jury Demanded |

## SUPPLEMENTAL AFFIDAVIT OF SALVATORE ZICCARELLI

Salvatore Ziccarelli, being first duly sworn under oath, deposes and swears under penalties for perjury that he makes the following statements on the basis of his own personal knowledge, and that the statements are true.

1.     I was and remained employed as a Corrections Officer by Defendant THOMAS J. DART, SHERIFF OF COOK COUNTY ("Dart") and Cook County Sheriff's Office. ("CCSO") from approximately 1990 until September 2016. The Affidavit is supplemental to the Affidavit I executed in about April 2018 in response to Defendants' Motion for Summary Judgment filed in this case.

2.     Because of my illnesses, anxiety, depression and Post-Traumatic Stress Disorder ("PTSD"), I have difficulty in recounting to other people traumatic and anxiety-producing events

which transpire affecting me.  During the time period that I was employed by CCSO, I experienced an attack, in which I was approached and physically battered by several inmates who I was responsible for watching on my work assignment.  This attack happened in about 2010 or 2011, when I was working in Division 2 of the Cook County Jail, under the supervision of Captain Henry Page.

3.      Captain Page seemed to dislike me, for reasons he did not express to me.  I was never insubordinate, and at all times performed my work duties and discharged my responsibilities such that my job performance consistently equalled or exceeded the reasonable expectations of supervisory personnel in CCSO, and of Sheriff Dart.

4.      Captain Page regularly assigned me to watch tiers of twenty to forty inmates without assistance of a backup officer.  A backup officer is critical to the function of an officer assigned to watch inmates, because the number of inmates to be watched at a given time regularly exceeded the number of inmates any single officer would be required to watch under the General Orders of CCSO, as well as State guidelines.

5.      Captain Page sometimes assigned Officer McCloud, a black female officer, to serve as my backup watch officer.  This was ineffective and futile in practice, because Captain Page would regularly pull Officer McCloud, with whom Captain Page was on friendly terms, to work with him or spend time with him in his office.  During the times Officer McCloud was in Captain Page's office, Officer McCloud was physically not able and not available to serve as backup to me, even though I would be executing my assignment of watching tiers of up to forty inmates.

6.      I notified my Sergeant, Sergeant Smith, of Captain Page's refusal to afford me backup when I was watching inmate tiers.  Despite Sergeant Smith's efforts to bring this to Captain

2

Page's attention, Captain Page, upon information and belief, failed and refused to ensure that I had backup on my watch assignments. I was continually forced to watch inmate tiers myself regardless of my complaints to Sergeant Smith and to Captain Page. Captain Page's superior, Superintendent Martha Salazar, similarly identified her "favorite" officers, most of whom were women, and kept them in easier assignments where they would have minimal or no contact with inmates. Thus those favorite officers would be "unavailable" to be assigned to afford backup to me in watching my tiers.

7.      At that time I was jumped and attacked by a gang of inmates in 2010. I was working on the date of the attack on the 3d Floor tier of Division 2, either in Dormitory 1 or Dormitory 2, to the best of my recollection.

8.      Immediately prior to the 2010 attack event, I was working alone watching a tier of inmates. I inspected a bathroom and shower area, and noticed a light blue inmate bedding sheet improperly hung in that bathroom and shower area. I went toward it in order to remove it, only to discover that a group of at least five Black race or African-American race inmates were concealed behind the sheet. They rushed me, covered me with the light blue inmate bedding sheet, jumped on me, and attacked me, striking me several times around the upper body and head. I struck my head and became unconscious as a result of the attack. I do not know for how long a time period I lost consciousness.

9.      When I recovered consciousness, I was on the ground of the bathroom with a sheet over me. My outer pants had been unclasped and pulled down from my hips. I was upset and humiliated by this event, and could not speak to anyone about it at all, including my supervisor,

anyone employed within CCSO or my attorney.

10.      I was not able to discuss the attack event in 2010 with anyone in subsequent years.

Finally I spoke about events of being bullied on the job with my psychiatrist, Dr. Hangora.  Even

while discussing bullying and traumatic events with Dr. Hangora, I experience trauma and

anxiety when I think about potentially discussing the attack event.  I was unable to process the

2010 attack event, and to speak about it to my attorney or in the context of this lawsuit during the

time period that the lawsuit and post-judgment motions were being disposed by this Court.

11.      On September 20, 2016, I effected my retirement from employment by Dart and the

CCSO based upon an oral representation and threat from Defendant Wyola Shinnawi.

12.      I am a White male, age fifty-four years. As noted in my previous Affidavit, I have been

diagnosed as afflicted with, and suffering from, anxiety, depression and post-traumatic stress

disorder ("PTSD"). Prior to 2016, I had sought treatment of these conditions.  In connection with

such treatment, I reported my condition and physicians' diagnoses to Dart and CCSO, and

specifically to persons working in the Human Resources Department for CCSO. As a result of

such reporting, Defendants Dart and CCSO pre-approved me for Family and Medical Leave Act

of 1993 ("FMLA") leave.

13.      I was FMLA-approved by CCSO as of January 1, 2016.  CCSO personnel were also

aware of my experiencing anxiety, depression and Post-Traumatic Stress Disorder ("PTSD").

14.      In addition to my psychological illnesses, I am afflicted with a long term or permanent

shoulder / tendon injury which limits my physical capacity, specifically in regard to repetitive

motions with the injured shoulder. I suffer from Deep Vein Thrombosis ("DVT") in the left leg,

which causes blood-clotting and extreme swelling.  These condition has been identified by

4

Defendant Dart as a permanent condition for which I am entitled to benefits under the FMLA.

15.     My psychiatrist, Dr. Hangora, recommended in July 2016, that I take leave from working at CCSO for a period of eight weeks, and particularly that I undergo Partial Hospitalization Program ("PHP") to treat my PTSD during the eight weeks' leave. (Copies of my prescription and physician's report are attached as Exhibit 1 and made a part of this Affidavit).

16.     I promptly sought to arrange leave with CCSO and Dart's Human Resources personnel. CCSO personnel, specifically Human Resources employee Defendant Wyola Shinnawi, the FMLA liaison or representative within the CCSO Human Resources office, refused nevertheless to authorize the consecutive time period of leave, and advised me that I could not take medical leave or disability leave on days which immediately precede or follow weekends, holidays, or normal "days-off" for me, and that if I nonetheless did seek to take the time off I would be subject to discipline.

17.     According to CCSO records, I had ample medical leave time available to me to take the eight weeks' leave pursuant to his psychiatrist's directions – I had approximately three months' worth of medical leave available to me, in fact.

18.     I disagreed with Defendant Wyola Shinnawi's refusal, and pursued the issue, since following the directive of Defendant Wyola Shinnawi and CCSO Human Resources Department would materially interfere with my participation in the Partial Hospitalization Program ("PHP") prescribed by my psychiatrist. Nonetheless, CCSO Human Resources personnel, specifically Defendant Wyola Shinnawi, acting in her capacity as agent and Human Resources employee for Dart, refused to afford to me the time off in spite of my identified medical and psychiatric needs, insisting that I would be subject to discipline if I took time off as directed.

19.      I discussed this impasse with Mr. Dennis Andrews, a representative of my labor union.

I told Mr. Andrews that I feared being fired if I did the PHP recommended by my physician.

Dennis Andrews responded to me that there was nothing he or the union could do unless and

until I was fired from my job for undergoing the PHP.

20.     I had been fired from my job once previously, in 1989 when I refused to testify according

to the directions and specifications expressed to me by an Assistant Cook County State's

Attorney in a criminal case in which I was a witness.  At that time, I had to file a civil rights

lawsuit in order to recover my job at CCSO.  That was successful, but the result was that I was

jobless for over one year at that time.

21.     Based upon my prior experience being fired from CCSO in 1989, and on the

unsatisfactory remarks of Union representative Dennis Andrews, I feared that I would be subject

to disciplinary action to discharge me from my employment at CCSO if I took time off to

address my psychiatric needs and trauma. Thus, I took early retirement on September 20, 2016. I

was just fifty-two years old at the time of such retirement.

22.     As a direct consequence of Defendant Wyola Shinnawi's and Defendant Dart / CCSO's

actions and threats, I suffered a nervous breakdown in September, 2016.

23.     Defendant Dart, CCSO and Defendant Wyola Shinnawi knew that I was a person with a

disability at all times from July 2016, through September 2016, the time period of the events

described hereinabove. Specifically, Dart, CCSO and Wyola knew that I suffered from PTSD,

anxiety and depression, and that I received FMLA-required leave, approved by Dart and

CCSO, in connection with these conditions.  Defendants were aware of my shoulder tendon issue

and left leg DVT, which also causes me substantial distress.

24.     Defendant Wyola Shinnawi, individually and in her capacity as FMLA representative for

Dart and CCSO, knew or should have known that my condition may deteriorate as a

6

consequence of being denied prescribed treatment (outpatient hospitalization as directed by my

psychiatrist) and of the threat of discipline, and possible discharge from employment, if I were

nonetheless to pursue the outpatient hospitalization.

25.     Defendant Wyola Shinnawi's testimony in her deposition in this case that she never

threatened disciplinary action against me is untrue.

26.     I have never been disciplined for misconduct or insubordination or employment-related

shortcomings as a CCSO Officer.  The above-mentioned occasion in 1989 was that I was

wrongfully discharged from my employment for refusing to commit perjury, at the behest of the

Cook County State's Attorney's Office, in a murder case pending in the Circuit Court of Cook

County.  I was forced to file a lawsuit in this Court to recover my employment, which was

restored in 1990 as part of the resolution of that lawsuit.  There is no reason I would leave my

employment in September 2016, without exhausting my available medical leave (valued at

$15,000.00 to $20,000.00 based upon my 2016 salary level).

27.     I was prescribed three distinct medications, to be consumed concurrently (at the same

time period), beginning July 2016, based upon my extreme PTSD.  I became extremely anxious

as a consequence of my conversation with Defendant Wyola Shinnawi concerning potential

discipline in the event I followed through with Dr. Hangora's partial hospitalization prescription

and recommendation.

28.     Nowadays I have several responses to the anxiety and trauma I experience.  I have at

times consumed alcohol to excess in an attempt to dull the pain.  I take anti-anxiety medication,

Lorazepem, as well as Tomagopan so that I may sleep.  I spend several hours at a Catholic

Church in Summit, Illinois, on a daily basis so that I may find some peace; the priest has

7

furnished me keys to the church so that I may access the chapel as needed.

29.    I continue to experience night sweats and disturbed sleeping.  I also regularly have anxiety attacks, to the extent that I am unable to see my children.  I am in a constant state of nervous agitation.

30.    I was unable to discuss the circumstances of the inmate attack against me with my attorney until after the time period for responding to the Defendants' Motion for Summary Judgment in this case, and after the time period for filing a Fed. Rule Civ. P. 59(e) Motion to Alter or Amend Judgment had elapsed.  The nature of my anxiety and PTSD makes it unusually difficult to recall the inmate attack event, and to discuss it with anyone, including my attorney.  Upon information and belief, the same anxiety and stress response that motivated me to conceal the inmate attack when testifying in my deposition and discussing my case with my attorney makes it difficult to respond appropriately to information such as Wyola Shinnawi's 2016 statement to me that I would be subject to discipline if I undertook the PHP recommended by my psychiatrist.

Further Affiant sayeth naught.

Under penalties for perjury, the undersigned party, Salvatore Ziccarelli, deposes and says that he makes the foregoing statements on the basis of his own personal knowledge, that he would testify competently to the same, and that the statements are true, except as to those statements set forth on information and belief, and as to those statements Salvatore Ziccarelli certifies and declares that he believes them to be true.

__/S/__ Salvatore Ziccarelli _____<br>
SALVATORE ZICCARELLI, Plaintiff

Subscribed and sworn to before me this
19th day of June, 2019.


/S/___ Michael J. Greco _____
Notary Public, State of Illinois
My Commission expires on March 5, 2022

Attorney No. 6201254
Michael J. Greco, Attorney at Law
Attorney for Plaintiff
175 W. Jackson Blvd., Suite 240
Chicago, Illinois 60654
312 222-0599
Email: michaelgreco18@yahoo.com