In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-3435

SALVATORE ZICCARELLI,

*Plaintiff-Appellant*,

*v.*

THOMAS J. DART, et al.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-03179 — **Ronald A. Guzmán**, *Judge*.

———————————

ARGUED OCTOBER 28, 2021 — DECIDED JUNE 1, 2022

———————————

Before RIPPLE, HAMILTON, and SCUDDER, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff-appellant Salvatore
Ziccarelli worked for the Cook County Sheriff's Office for
twenty-seven years. During those years, he periodically took
leave under the Family and Medical Leave Act of 1993
("FMLA" or "Act"), 29 U.S.C. § 2601 et seq. In September 2016,
Ziccarelli called the Sheriff's Office's FMLA manager, defend-
ant Wylola Shinnawi, to discuss taking more FMLA leave.
Based on the contents of that conversation—which are hotly

disputed—Ziccarelli says he decided to retire from the Sher-
iff's Office on September 20, 2016.

Ziccarelli then filed this suit against Sheriff Thomas Dart,
Shinnawi, and Cook County (together, "the Sheriff's Office")
alleging violations of his rights under Title VII of the Civil
Rights Act of 1964, the Age Discrimination in Employment
Act of 1967, the Americans with Disabilities Act of 1990, and
the FMLA. He also seeks indemnification of the other defend-
ants from Cook County. After discovery, the district court
granted the Sheriff's Office's motion for summary judgment
on all claims. Ziccarelli has appealed summary judgment as
to only his FMLA claims.

On appeal, Ziccarelli argues that a reasonable jury could
find that the Sheriff's Office interfered with his FMLA rights
during his conversation with Shinnawi in violation of 29
U.S.C. § 2615(a)(1) by discouraging him from using leave.
Ziccarelli also argues that he can survive summary judgment
on his claim that the Sheriff's Office constructively discharged
him to retaliate against him for calling Shinnawi to discuss
using more FMLA leave, in violation of § 2615(a)(2).

We affirm in part and reverse in part. We begin with plain-
tiff's interference claim to clarify this court's interpretation of
§ 2615(a)(1), and we then apply that provision to this case. We
conclude that plaintiff presented sufficient evidence to defeat
summary judgment on his claim of FMLA interference
through alleged discouragement. We hope this opinion will
help clarify that an employer can violate the FMLA by dis-
couraging an employee from exercising rights under the
FMLA without actually denying an FMLA leave request. We

affirm summary judgment for the Sheriff's Office on plaintiff's retaliation claim.[1]

I.   *Facts for Summary Judgment*

Plaintiff Ziccarelli began working for the Cook County Sheriff's Office as a corrections officer in 1989. He was fired after he provided character testimony for a defendant during a death penalty hearing. He was reinstated after a district court found that the Sheriff's Office had violated his First Amendment rights. *Ziccarelli v. Leake*, 767 F. Supp. 1450, 1458–59 (N.D. Ill. 1991).

During his career, plaintiff developed several serious health conditions for which he requested and received permission to take leave under the FMLA. From 2007 through early 2016, plaintiff used between 10 and 169 hours of FMLA leave per year. In July 2016 he sought treatment from a psychiatrist for his work-related post-traumatic stress disorder (PTSD), and by September he had used 304 hours of his allowable 480 hours of FMLA leave for 2016. On the advice of a doctor, plaintiff then decided that he should apply for permanent disability benefits. To do so, he needed to exhaust all his earned sick leave.

On his doctor's recommendation, plaintiff planned to use some of his available sick leave and annual leave to enroll in an eight-week treatment program to address his PTSD. In September 2016, plaintiff Ziccarelli called defendant

---

[1] Ziccarelli originally pursued his appeal pro se. After reviewing the parties' briefs, we recruited counsel for Ziccarelli (the Georgetown University Law Center's Appellate Courts Immersion Clinic under the supervision of Professor Brian Wolfman) and ordered a new round of briefing. We thank counsel for their capable assistance to the court and their client.

Shinnawi to discuss the possibility of using a combination of
FMLA leave, sick leave, and annual leave for his treatment
program. Shinnawi was authorized to approve or deny use of
FMLA benefits, but she did not have direct access to sick leave
information for Sheriff's Office employees. She also could not
approve or deny use of sick leave or annual leave.

Ziccarelli's and Shinnawi's accounts of their conversation
differ starkly. In reviewing a grant of summary judgment, we
must credit Ziccarelli's, leaving material factual disputes for
a jury.

Ziccarelli testified that he called Shinnawi and told her he
needed to use more FMLA leave so he could seek treatment.
In his account, Shinnawi responded by saying "you've taken
serious amounts of FMLA …. don't take any more FMLA. If
you do so, you will be disciplined." Ziccarelli Dep. 42. In his
deposition, Ziccarelli testified that he never told Shinnawi
how much FMLA leave he sought to use and that he told her
only that he needed to use more FMLA leave. He even cor-
rected counsel on this point:

Q. That she told you that you could be disci-
plined if you took unauthorized—

A. You will be disciplined.

Q. —if you took unauthorized FMLA?

A. More FMLA. More FMLA.

*Id.* at 53.

In plaintiff's account, Shinnawi never explained what dis-
cipline he might be subject to for taking more FMLA leave,
but based on his past experience with the department, he
feared that he would be fired. Plaintiff retired from the

department shortly after speaking with Shinnawi, effective on September 20, 2016. Plaintiff did not take leave and was not disciplined before he departed.[2]

## II.  *District Court Proceedings*

Shortly after he retired, plaintiff exhausted administrative remedies and then filed a complaint in the district court against Sheriff Thomas Dart, Shinnawi, and Cook County claiming violations of his rights under the FMLA and other statutes and seeking indemnification from the county on these claims.

The district court granted the defendants' motion for summary judgment on all claims. On the FMLA claims, the court found that plaintiff's retaliation claim failed because he did not offer evidence of an adverse employment action, and his

---

[2] Shinnawi recalled this conversation very differently. According to her testimony, plaintiff "requested a leave of several months, and at that point I told him he did not have enough FMLA hours left for that time period." Shinnawi Dep. 17–18. She did not consider whether he had other forms of leave available to use, such as disability or sick leave, and she did not remember whether he asked to use it**.** Shinnawi recalled that plaintiff wanted to know if he would "get in trouble," and she explained in her deposition that "if he used FMLA that he did not have, it would be coded unauthorized, and then attendance review would handle it moving forward." Shinnawi Dep. 19. Attendance Review is the unit that processes and tracks discipline for attendance infractions within the Sheriff's Office. When plaintiff asked if that meant he would be fired, she told him "that's attendance review," and "I cannot give you FMLA hours that you don't have." Shinnawi Dep. 20. According to Shinnawi, she said nothing else to Ziccarelli about potential discipline. If Shinnawi's version is correct, we could not see a viable FMLA claim. We emphasize, however, that because the defendants chose to move for summary judgment, we must discount Shinnawi's testimony and credit plaintiff's on these disputed factual issues.

interference claim failed because he did not show an actual
denial of FMLA benefits. Plaintiff Ziccarelli appeals the
court's grant of summary judgment on only his FMLA claims.

III. *Standard of Review and Legal Framework*

We review a district court's grant of summary judgment
de novo, giving plaintiff as the non-moving party the benefit
of conflicting evidence and any favorable inferences that
might be reasonably drawn from the evidence. *Lane v. River-
view Hospital*, 835 F.3d 691, 694 (7th Cir. 2016). Summary judg-
ment is appropriate where there is no genuine dispute of ma-
terial fact and the movant is entitled to judgment as a matter
of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 247 (1986).

We pause briefly to remind the parties of their obligations
with respect to the facts at the summary judgment stage. The
Sheriff's Office attempts to argue there is no genuine dispute
of material fact, but in doing so it relies on Shinnawi's version
of her key conversation with Ziccarelli, even though Ziccarelli
directly contradicted her version in his deposition testimony.
See Appellees' Br. at 12–13. Our precedent demands more of
the moving party at summary judgment. See, e.g., *Stewart v.
Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021)
(discouraging moving party from presenting facts with a
"loose allegiance" to the summary judgment standard); *Malin
v. Hospira, Inc.*, 762 F.3d 552, 564–65 (7th Cir. 2014) (reversing
summary judgment and criticizing moving party for ignoring
conflicting evidence); *Payne v. Pauley*, 337 F.3d 767, 770–73 (7th
Cir. 2003) (reversing summary judgment and explaining that
both the moving and non-moving parties may rely on "self-
serving" testimony); see generally *Anderson*, 477 U.S. at 255
("Credibility determinations, the weighing of the evidence,

No. 19-3435 7

and the drawing of legitimate inferences from the facts are
jury functions, not those of a judge, whether he is ruling on a
motion for summary judgment or for a directed verdict.").
Even if a judge might believe a moving party has more and/or
better evidence in its favor, a motion for summary judgment
does not authorize or invite the judge to weigh evidence and
decide whose story is more credible or persuasive. As noted,
we must consider the evidence in the light most favorable to
the party opposing summary judgment, drawing all reasona-
ble inferences in that party's favor. *Anderson*, 477 U.S. at 255;
*Stewart*, 14 F.4th at 760.

We turn now to the statutory framework. The FMLA was
designed "to balance the demands of the workplace with the
needs of families" while guaranteeing workers reasonable ac-
cess to medical leave "in a manner that accommodates the le-
gitimate interests of employers." 29 U.S.C. § 2601(b)(1)–(3). To
that end, the FMLA grants eligible employees up to 12 work-
weeks of unpaid leave (480 hours) per year for medical and
family reasons. See § 2612(a)(1) & (c). An eligible employee is
entitled to restoration to the same or equivalent job and bene-
fits when the leave ends, and to continuation of health insur-
ance during leave. § 2614(a)(1) & (c)(1).

To protect these rights, the FMLA prohibits covered em-
ployers from (i) interfering with, restraining, or denying the
exercise of FMLA rights; and (ii) discriminating or retaliating
against employees for exercising FMLA rights. See
§ 2615(a)(1) & (a)(2). The FMLA also grants employees a right
of action to recover damages for violations of these provi-
sions. § 2617(a)(2).

On appeal, plaintiff Ziccarelli makes two distinct claims
under the FMLA. First, he claims interference with his FMLA

rights under § 2615(a)(1) on the theory that he was discouraged from taking FMLA leave he was entitled to take. Second, he claims retaliation against him in violation of § 2615(a)(2) on the theory that the Sheriff's Office constructively discharged him. We consider his interference claim first, which poses an issue of statutory construction that prompted us to recruit counsel for plaintiff. Applying the correct interpretation of the statute, we reverse the district court's grant of summary judgment based on the unlawful discouragement theory of FMLA interference. We then explain why we affirm summary judgment for defendants on plaintiff's constructive discharge theory of retaliation.[3]

## IV. *FMLA Interference*

The FMLA provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to

---

[3] On appeal, Ziccarelli also argues that the Sheriff's Office interfered with his FMLA benefits in violation of § 2615(a)(1) by failing to inform him whether his requested leave would qualify under the FMLA and by failing to answer his questions about use of leave and possible punishment. As defendants note, Ziccarelli did not raise this theory in the district court. Ziccarelli responds by arguing that the Sheriff's Office waived this "potential forfeiture" argument so that "this Court 'must treat the issue on the merits.'" Reply Br. at 4 n.1, quoting *Geva v. Leo Burnett Co.*, 931 F.2d 1220, 1225 (7th Cir. 1991). We think the late Judge Cudahy would be surprised to learn his opinion in *Geva* had such a sweeping effect on the law of forfeiture and waiver. We reject this remarkable claim. Ziccarelli never presented this theory of FMLA interference to the district court. He waived this argument and we do not consider it. See *Markel Insurance Co. v. Rau*, 954 F.3d 1012, 1018 (7th Cir. 2020) (defendant's "first problem is that she did not make this argument before the district court, and so she may not raise it now for the first time on appeal"); *Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir. 1997) ("It is axiomatic that arguments not raised below are waived on appeal.").

exercise, any right provided under" the Act. 29 U.S.C.
§ 2615(a)(1). Our cases have identified five elements for an
FMLA interference claim. The first four elements require the
plaintiff to show that: (i) the employee was eligible for FMLA
protections; (ii) the employer was covered by the FMLA; (iii)
the employee was entitled to leave under the FMLA; and (iv)
the employee provided sufficient notice of intent to take
FMLA leave. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th
Cir. 2020); *Preddie v. Bartholomew Consolidated School Corp.*, 799
F.3d 806, 816 (7th Cir. 2015). For the fifth element, our opin-
ions have used varying language that has led to some confu-
sion. Some cases have said the employee must show that "his
employer denied him FMLA benefits to which he was enti-
tled," e.g., *Lutes*, 950 F.3d at 363, while others have said that
the employee must show that "his employer denied or inter-
fered with FMLA benefits to which he was entitled." E.g.,
*Preddie*, 799 F.3d at 816 (cleaned up). If a plaintiff shows a vi-
olation of § 2615(a)(1), winning relief requires the plaintiff to
show "prejudice," meaning harm resulting from the violation.
29 U.S.C. § 2617(a); *Lutes*, 950 F.3d at 368, citing *Ragsdale v.
Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

The first four elements of interference are uncontested
here, so this appeal focuses on the fifth element and whether
Ziccarelli can show prejudice. We must interpret § 2615(a)(1)
to resolve the parties' dispute over how to formulate the fifth
element of the test for FMLA interference. The text of
§ 2615(a)(1) makes clear that a violation does not require ac-
tual denial of FMLA benefits. This understanding of the stat-
ute does not conflict with the relevant case law in this or other
circuits. Any apparent contradictions prove illusory on closer
inspection. We then apply this interpretation to this case.

A.  *Denial Not Required to Violate § 2615(a)(1)*

Section 2615(a)(1) makes it unlawful for a covered employer to "interfere with, restrain, or deny" an eligible employee's exercise or attempt to exercise FMLA rights. The Sheriff's Office urges us to interpret § 2615(a)(1) to require a plaintiff to show he was actually denied FMLA rights to meet the fifth prong of the test for FMLA interference. We disagree.

1.  *Statutory Text and Context*

The statutory text and context favor a reading that interference with, or restraint of FMLA rights can violate § 2615(a)(1), without proof of an actual denial, for at least four reasons. First, the three verbs in § 2615(a)(1) are listed disjunctively. They are not coextensive, and there is no indication that all three were included in § 2615(a)(1) for the sake of redundant emphasis. Second, § 2615(a)(1) protects "the attempt to exercise" FMLA rights, which would make little sense if actual denial were required.  Third, reading § 2615(a)(1) to permit the array of activities that prejudice but do not deny FMLA rights would undermine the FMLA's guarantees of family and medical leave to eligible employees and their families. Finally, Department of Labor regulations implementing the FMLA provide additional persuasive evidence supporting the plain-language interpretation of these provisions. We discuss each point in turn.

First, the use of the disjunctive "or" in § 2615(a)(1) signals that interference or restraint without denial is sufficient to violate the statute, and that requiring denial would turn "interfere with, restrain, or" into surplusage. See *Encino Motorcars, LLC v. Navarro*, — U.S. —, 138 S. Ct. 1134, 1141 (2018) (noting that "'or' is 'almost always disjunctive'" (internal citation

omitted)). By itself the point is not necessarily decisive. See, e.g., *Reid Hospital and Health Care Services, Inc. v. Conifer Revenue Cycle Solutions, LLC*, 8 F.4th 642, 652 (7th Cir. 2021) (discussing limit of anti-surplusage canon for contracts and statutes). It is well recognized that the anti-surplusage canon has limits and that statutory drafters often take a "belt-and-suspenders approach" to ensure that the statutory language captures the intended universe, sometimes producing texts that emphasize redundance over brevity. *Id.* (collecting authorities). The anti-surplusage canon alone does not resolve the question before us, but its application to § 2615(a)(1) points in the same direction as the other textual evidence.

For example, the activities prohibited by § 2615(a)(1) are related but are not so similar that their appearance together indicates redundancy. Each adds to the scope of the prohibition. When employers *refuse to grant or accept* proper FMLA requests, they deny access within the meaning of the Act. Such a denial also acts (i) as a form of interference (by *checking* or *hampering* FMLA access); and (ii) as a restraint (by *limiting* FMLA access). But the reverse is not necessarily true. An employer can interfere with or restrain rights under the FMLA without explicitly denying a leave request.[4]

---

[4] The edition of Black's Law Dictionary current when the FMLA was passed in 1993 defined these terms as follows:

Deny. To traverse. To give negative answer or reply to. To refuse to grant or accept. To refuse to grant a petition or protest.

Interfere. To check; hamper; hinder; infringe; encroach; trespass; disturb; intervene; intermeddle; interpose. To enter into, or take part in, the concerns of others.

Restrain. To limit, confine, abridge, narrow down, restrict, obstruct, impede, hinder, stay, destroy. To prohibit from action; to

For example, an employer that implements a burdensome approval process or discourages employees from requesting FMLA leave could interfere with and restrain access without denying many requests because few requests requiring a formal decision would ever be made. By including the trio of verbs in § 2615(a)(1) in a disjunctive clause, Congress enacted statutory language that strongly suggests that interfering, restraining, and denying are distinct ways of violating the FMLA.

Second, § 2615(a)(1) also protects "the attempt to exercise" FMLA rights. Suppose that an electrician meets with her employer and seeks medical leave information, intending to exercise FMLA rights. This likely qualifies as an attempt to exercise benefits under the Act even if the electrician does not specifically invoke the FMLA. *Preddie*, 799 F.3d at 816 ("The notice requirements of the FMLA are not onerous. An employee need not expressly mention the FMLA in his leave request or otherwise invoke any of its provisions."), quoting *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006). Are we to read § 2615(a)(1) so that no violation can take place until the employer refuses to grant an actual FMLA request from the electrician? If so, then the electrician might not be protected during the initial phase of preparing and formulating an FMLA request.

---

put compulsion upon; to restrict; to hold or press back. To keep in check; to hold back from acting, proceeding, or advancing, either by physical or moral force, or by interposing obstacle; to repress or suppress; to curb. To restrict a person's movements in such manner as to interfere substantially with his liberty.

*Deny, Interfere, Restrain*, Black's Law Dictionary (6th ed. 1990) (internal citations removed).

No. 19-3435                                                          13

Under this view, an employer that wanted to prevent FMLA use would have many options that would stop short of denying a claim, such as not providing basic FMLA information to an employee unaware of his rights, or orally discouraging FMLA use before the employee actually requested leave. This would be a strange result and would conflict with this court's precedents under the Act. See, e.g., *Lutes*, 950 F.3d at 362–63, 369 (reversing summary judgment against metal worker on FMLA interference claim when he was fired for staying home to recover from injury while unaware he may have qualified for FMLA); *Preddie*, 799 F.3d at 818, 821 (reversing summary judgment against teacher on FMLA interference claim when principal told him that missing additional time would have consequences). As applied to the issue of denial, the text of § 2615(a)(1) is not ambiguous. For the Act to protect "the exercise of or the attempt to exercise" FMLA rights, it must be read so that an interference or restraint without actual denial is still a violation.

Third, reading the Act to permit employers to interfere with or restrain the use of FMLA rights as long as no unlawful denial occurs would conflict with and undermine the rights granted. 29 U.S.C. §§ 2601(b)(1) & (b)(2); 2617. Rights under the Act would be significantly diminished if it permitted employers to actively discourage employees from taking steps to access FMLA benefits or otherwise to interfere with or restrain such access. The Act was designed to accommodate "the *legitimate* interests of employers," § 2601(b)(3) (emphasis added), but we see no legitimate interest for employers in impeding access to FMLA benefits by subterfuge, concealment, or intimidation.

Finally, Department of Labor regulations implementing the FMLA also support this interpretation:

> (a) *The FMLA prohibits interference with an employee's rights under the law*, and with legal proceedings or inquiries relating to an employee's rights. …

> (b) Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. … Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but *discouraging an employee from using such leave*.

See 29 C.F.R. § 825.220(a)–(b) (emphasis added).

Section 2615(a)(1) is not ambiguous about whether denial is required to show a violation, so *Chevron* deference does not apply here. See *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. of Health*, 699 F.3d 962, 980 (7th Cir. 2012) ("In the absence of ambiguity, *Chevron* deference does not come into play."), citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). But the FMLA vests the Secretary of Labor with broad authority to issue regulations implementing the FMLA, and his regulatory interpretation is further persuasive evidence that the best reading of § 2615(a)(1) is that actual denial is not required. 29 U.S.C § 2654.[5]

---

[5] At this court's invitation, the Department of Labor submitted an amicus brief on the question whether "a plaintiff pursuing a claim of interference with rights under the Family and Medical Leave Act, 29 U.S.C.

No. 19-3435                                                    15

### 2.  *Case Law on FMLA Interference*

Despite the broader statutory language, opinions of this court and others have sometimes phrased the test for FMLA interference in terms that seem to require an actual denial of benefits. See, e.g., *Lutes*, 950 F.3d at 363 ("his employer denied him FMLA benefits to which he was entitled"); *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018) ("her employer denied her FMLA benefits to which she was entitled"); *Thompson v. Kanabec County*, 958 F.3d 698, 705 (8th Cir. 2020) (requiring plaintiff to show "the reason for the denial was connected to the employee's FMLA leave"). But judicial opinions are not statutes. Treating them as if they were is "a common source of erroneous predictions concerning the scope and direction of the law." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 866 (7th Cir. 1999). There have been variations in how to word the test for FMLA interference, but there is no genuine intra- or inter-circuit split on whether denial is essential and whether the requirement that plaintiff show prejudice precludes claims based on interference alone.[6]

---

§ 2615(a), must present evidence that the employer 'denied' FMLA benefits to which the plaintiff was entitled, or merely 'interfered with' those benefits." We thank the department for its views.

[6] Our interpretation of § 2615(a)(1) is consistent with other circuits' decisions, albeit sometimes via non-precedential opinions or in dicta. See, e.g., *Diamond v. Hospice of Florida Keys, Inc.*, 677 F. App'x 586, 593 (11th Cir. 2017) (plaintiff offered enough evidence for jury to conclude employer violated § 2615(a)(1) by "discouraging her from taking FMLA leave in order to care for her seriously ill parents"); *Hurtt v. Int'l Services, Inc.*, 627 F. App'x 414, 424 (6th Cir. 2015) (stating five-part FMLA interference test in terms of denial of benefits, but concluding that FMLA interference includes "discouraging an employee from using FMLA leave" (cleaned up)); *Quinn v. St. Louis County*, 653 F.3d 745, 753 (8th Cir. 2011) (noting in dicta

The only time this court squarely confronted whether FMLA interference requires actual denial of benefits, we said no. In *Preddie* this court determined that § 2615(a)(1) allows FMLA interference claims based on discouragement. 799 F.3d at 818 (noting that interference includes "discouraging an employee from using" FMLA leave (internal citation omitted)). In *Preddie*, a teacher took time off to care for his son, who suffered serious episodic side effects from sickle cell anemia. *Id.* at 810. The teacher never actually applied for FMLA leave, so we considered whether § 2615(a)(1) required denial and decided that it did not. *Id.* at 811, 818. We reversed summary judgment, finding that the evidence could allow a reasonable jury to find that the school interfered with the teacher's FMLA rights by discouraging and threatening him. *Id.* at 818. We also noted that a jury could find the teacher was injured by the school's discouragement because he showed evidence that he consciously chose not to take additional leave based on the principal's threats. *Id.*

Other opinions by this court appear to conflict with our view and *Preddie*, but those concerns dissipate on closer

---

that "FMLA interference includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" (internal quotes and citation omitted)); *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 7 (D.C. Cir. 2010) (noting that plaintiff could succeed in her FMLA interference claim without showing her employer denied leave request as long as she showed interference with exercise of her FMLA rights and prejudice from violation); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing 29 C.F.R. § 825.220(b) for idea that FMLA interference can include discouragement, but not relying on this theory); *Liu v. Amway Corp.*, 347 F.3d 1125, 1133–34 (9th Cir. 2003) (reversing summary judgment in part; pressuring employee to reduce leave time violated FMLA interference provision).

inspection. We said in *Lutes* that a plaintiff must show "his employer denied him FMLA benefits to which he was entitled," but our legal analysis did not focus on denial. 950 F.3d at 363. Instead, we determined that the metal worker could survive summary judgment on remand if he could show "that he would have structured his leave differently had he received the proper information." *Id.* at 368, citing *Ragsdale*, 535 U.S. at 90.

Similarly, in *Guzman* we affirmed summary judgment against a plaintiff's FMLA interference claim because she was not "denied FMLA benefits to which she was entitled," but the precise phrasing of the fifth part of the test for FMLA interference did not matter to the result. 884 F.3d at 640. The employee's claim failed because (i) she could not show a serious health condition and was not eligible for FMLA protections; and (ii) her employer decided to terminate her before she gave notice of an attempt to exercise FMLA rights. *Id.* at 639–40, citing *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) (affirming summary judgment against an FMLA interference claim when employee failed to show he would have kept his job if he had not taken FMLA leave). Thus, we see no genuine intra-circuit split on whether a violation of § 2615(a)(1) requires actual denial of benefits.

The Sheriff's Office argues that we should follow the approach of the Eighth Circuit and read § 2615(a)(1) to require denial because the plaintiff must "connect the FMLA request with a concrete negative job consequence." Appellees' Br. at 9, citing *Thompson*, 958 F.3d at 705–06. The Sheriff's Office is correct that a violation of the FMLA on its own is not enough to establish an interference claim—a plaintiff must also show that the violation prejudiced him. *Lutes*, 950 F.3d at 368, citing

*Ragsdale,* 535 U.S. at 89. But this prejudice question is used to decide whether § 2617 provides relief for a proven violation. It does not set the threshold for what constitutes a violation of § 2615(a)(1) in the first place. See *Ragsdale*, 535 U.S. at 89.

The best reading of *Thompson* and similar cases is that they focus on whether the employee suffered prejudice from the employer's actions. They do not stand for the proposition that plaintiffs who show interference without denial of FMLA rights cannot recover under the FMLA. See *Thompson*, 958 F.3d at 706 (affirming summary judgment against nurse's FMLA interference claim when she could not show prejudice from an acknowledged delay in processing FMLA request); see also *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 246 (3d Cir. 2016) (affirming summary judgment against police officer's FMLA interference claim in part because he took the leave to which he was entitled and failed to show prejudice).

Accordingly, we conclude there is no intra- or inter-circuit split on whether interference with FMLA rights without actual denial can violate § 2615(a)(1). Section 2615(a)(1) is not ambiguous on this issue—denial of FMLA benefits is *not* required to demonstrate an FMLA interference violation. Interference or restraint alone is enough to establish a violation, and a remedy is available under § 2617 if the plaintiff can show prejudice from the violation.

B.  *Interference with Ziccarelli's Attempt to Exercise FMLA Rights*

Accordingly, to show an FMLA interference violation under § 2615(a)(1), Ziccarelli must show that: (i) he was eligible for FMLA protections; (ii) the Sheriff's Office was covered by

the FMLA; (iii) he was entitled to leave under the FMLA; (iv) he provided sufficient notice of his intent to take leave; and (v) the Sheriff's Office interfered with, restrained, or denied FMLA benefits to which he was entitled. See 29 U.S.C. § 2615(a)(1); *Preddie*, 799 F.3d at 816. To recover for a violation of § 2615(a)(1), Ziccarelli must also show he was prejudiced by the unlawful actions of the Sheriff's Office. § 2617(a); *Lutes*, 950 F.3d at 368, citing *Ragsdale*, 535 U.S. at 89.

Only the fifth element of the test for FMLA interference and prejudice are at issue in this appeal. Giving plaintiff the benefit of conflicts in the evidence and reasonable favorable inferences, he has presented a genuine issue of material fact as to whether the Sheriff's Office violated § 2615(a)(1) when Shinnawi allegedly discouraged him from taking leave and as to whether these actions prejudiced him.

Ziccarelli had over one month of FMLA leave available when he called Shinnawi in September 2016 to request FMLA leave. According to Ziccarelli, though, when he asked to take "more" FMLA leave, Shinnawi responded by saying "don't take any more FMLA. If you do so, you will be disciplined." Ziccarelli's Dep. 42.

As noted, Shinnawi's testimony is very different, but determining which story is more credible is a job for the trier of fact. "[S]ummary judgment cannot be used to resolve swearing contests between litigants." *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (internal citation and quotation marks omitted); see also *Goelzer v. Sheboygan County*, 604 F.3d 987, 995 (7th Cir. 2010) (summary judgment on FMLA interference claim inappropriate where "we are left with two competing accounts, either of which a jury could believe"). We are required to give Ziccarelli the

benefit of conflicting evidence about the substance of his conversation with Shinnawi. *Lane*, 835 F.3d at 694.

Threatening to discipline an employee for seeking or using FMLA leave to which he is entitled clearly qualifies as interference with FMLA rights. See *Preddie*, 799 F.3d at 818. A reasonable jury could believe Ziccarelli's account and find that the Sheriff's Office (through Shinnawi) interfered with his remaining FMLA leave hours for 2016 by threatening to discipline him for using them. See *id.* (deciding jury could conclude school interfered with teacher's FMLA rights when principal threatened consequences for using more FMLA leave). There is a triable issue of fact as to whether Ziccarelli can meet the fifth element of the test for FMLA interference.

The Sheriff's Office claims that it did not interfere with Ziccarelli's access to FMLA leave because "[n]othing in the record indicates that Plaintiff was prohibited from using his remaining FMLA time that he had previously been approved to take." Appellees' Br. at 13. As explained above, denial is not the only way that an employer can violate § 2615(a)(1). It is enough that Ziccarelli presents evidence allowing a reasonable jury to conclude that the Sheriff's Office discouraged him from exercising his FMLA rights. See *Preddie*, 799 F.3d at 818.

There is also evidence in the record that Shinnawi's statements prejudiced Ziccarelli by affecting his decisions about FMLA leave. Ziccarelli had planned to use some of his remaining FMLA leave to seek treatment. After their conversation, Ziccarelli never submitted an FMLA request and did not use the remainder of his 2016 FMLA leave. Ziccarelli claims he was afraid of what would happen after Shinnawi threatened him with discipline for taking more FMLA leave.

Evidence of a link between Shinnawi's alleged discouragement and Ziccarelli's decision not to take his remaining FMLA leave for 2016 is sufficient to require a trial. A reasonable jury that believed Ziccarelli's account could find that the Sheriff's Office violated § 2615(a)(1) and that the violation prejudiced Ziccarelli's access to his remaining FMLA leave hours for 2016. See *Lutes*, 950 F.3d at 368.

One feature of this case makes the prejudice analysis for plaintiff's interference claim more complicated: his decision to retire from the Sheriff's Office shortly after his conversation with Shinnawi. As we explain below, even plaintiff's version of that conversation falls far short of evidence that could support a claim for constructive discharge. Plaintiff knew that he had some remaining FMLA leave, sick leave, and annual leave available for 2016. He also knew that Shinnawi was the FMLA specialist, and she had said nothing to address his use of sick leave that he says he wanted to use up, along with FMLA leave, to take the eight weeks of leave for the treatment program his doctor recommended. We do not see how an employee in plaintiff's situation could reasonably just give up and walk away from his job, benefits, and treatment plan entirely based on one conversation in which, under his version of the facts, the employer's representative was simply wrong.

The district court may have its hands full on remand, particularly if plaintiff tries to blame snowballing consequences, including even early retirement, on his conversation with Shinnawi. As skeptical as we might be about those efforts, we believe those issues need to be sorted out in the district court in the first instance.

V.  *FMLA Retaliation*

The FMLA makes it "unlawful for any employer to dis-
charge or in any other manner discriminate against any indi-
vidual for opposing any practice made unlawful by" the Act.
29 U.S.C. § 2615(a)(2). We analyze § 2615(a)(2) discrimination
claims using the same framework we use for retaliation
claims under other federal labor and employment laws, such
as Title VII of the Civil Rights Act of 1964 and the Americans
with Disabilities Act of 1990. See *Freelain v. Village of Oak Park*,
888 F.3d 895, 900–01 (7th Cir. 2018), citing *Buie v.
Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Construc-
tive discharge is one form of FMLA retaliation, and it can take
place when working conditions become objectively unbeara-
ble from the viewpoint of a reasonable employee. *Wright v.
Illinois Department of Children & Family Services*, 798 F.3d 513,
527 (7th Cir. 2015), citing *Chapin v. Fort-Rohr Motors, Inc.*, 621
F.3d 673, 679 (7th Cir. 2010).

We recognize two general theories of constructive dis-
charge. Under the first, a plaintiff resigns due to discrimina-
tory harassment and must "show working conditions even
more egregious than that required for a hostile work environ-
ment claim." *Id.*, quoting *Chapin*, 621 F.3d at 679. Based on its
assessment of Ziccarelli's claim of constructive discharge un-
der this first theory, the district court granted summary judg-
ment to the Sheriff's Office. On appeal Ziccarelli argues that
he can overcome summary judgment under the second the-
ory, that constructive discharge "occurs '[w]hen an employer
acts in a manner so as to have communicated to a reasonable
employee that she will be terminated.'" *Id.*, quoting *Chapin*,
621 F.3d at 679.

To prevail under the second theory of constructive dis-
charge, a plaintiff must show "that her working conditions
had become intolerable." *Wright*, 798 F.3d at 528, citing *Cha-
pin*, 621 F.3d at 679. Working conditions become intolerable
"when *the employer's actions* communicate to the employee
that she immediately and unavoidably will be terminated."
*Id.* at 528–29. Ziccarelli claims that he meets this standard on
the theory that his conversation with Shinnawi communi-
cated to him that he would be discharged "if he took *any*
FMLA leave, even leave to which he was entitled." Appel-
lant's Br. at 24. We do not agree with his theory.

Ziccarelli argues that under *Chapin* an employee has "am-
ple reason to believe his termination to be imminent" when
he receives a threat from his employer that is "very clearly
tied" to protected activity. Appellant's Br. at 24, quoting *Cha-
pin*, 621 F.3d at 680. This language from *Chapin* does not sup-
port the weight Ziccarelli places on it. In *Chapin*, after an ini-
tial threatening conversation, the plaintiff's employer
changed tack and attempted to reconcile. *Chapin*, 621 F.3d at
680. We determined that no reasonable person in the em-
ployee's position would have thought he had no choice but to
resign after his subsequent, more positive interactions with
his employer. *Id.* at 681. Ziccarelli's case is similar. A reasona-
ble person likely would have thought he had several options
short of immediate retirement under these facts, especially
when Ziccarelli had not yet even applied for FMLA leave and
any potential discipline remained remote.

Ziccarelli invites us to speculate that he would have been
discharged if he had exercised his right to his remaining
FMLA leave. If he had submitted an FMLA request and taken
his remaining leave to receive treatment, we assume it is

possible he might have been terminated, crediting his version of the conversation with Shinnawi. It is also possible that he might have been able to combine annual leave and sick leave with his remaining FMLA leave to seek treatment and avoid being fired. He might also have chosen to undergo a short-ened treatment program that matched the length of his re-maining FMLA leave. Choosing among these and other pos-sibilities on this record would require speculation on our part. We are particularly loath to engage in such guesswork in the constructive discharge context, "where we recognize that the burden remains on the employee to show why he would have had to 'quit immediately.'" *Chapin*, 621 F.3d at 680, quoting *Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998).

We conclude with some final observations. The parties have not litigated on appeal which of the three defendants (Shinnawi, Sheriff Dart, and Cook County) are proper defend-ants on Ziccarelli's FMLA interference claim. See 29 U.S.C. § 2611(4)(A)(ii)(I) (defining employer under the FMLA to in-clude "any person who acts, directly or indirectly, in the in-terest of an employer to any of the employees of such em-ployer"). The parties also have not addressed whether Sheriff Dart is sued in his personal or official capacities. Finally, Cook County preserved in the district court its argument that it is a proper party only as a potential indemnitor and only if either of the other two defendants is found liable on the interference claim. The district court may need to address those issues on remand.

We REVERSE the district court's grant of summary judg-ment on Ziccarelli's FMLA interference claim and REMAND for further proceedings on that claim consistent with this

No. 19-3435                                                                      25

opinion. We AFFIRM summary judgment for defendants on
Ziccarelli's FMLA retaliation claim.

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit